UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SUSAN G.,[1]

                              Plaintiff,                        DECISION AND ORDER

-vs-

                                                              1:20-CV-0663 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Jan. 25, 2021, ECF No. 14; Def.'s Mot., Mar. 26, 2021, ECF No. 15. Plaintiff maintains that the Commissioner's decision should be reversed and remanded for further administrative proceedings because (1) the Administrative Law Judge ("ALJ") erred in his evaluation of Plaintiff's subjective complaints, and (2) the ALJ's residual functional capacity determination was based on unsupported lay opinion. Pl. Mem. of Law, Mar. 26, 2021, ECF No. 14-1. The Commissioner counterargues that the ALJ did not commit legal error, and that his decision is based on substantial evidence.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, the Commissioner's motion [ECF No. 15] is granted, and the Clerk of Court is respectfully directed to close this case.

## BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Standard for Disability Determination

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

Procedural History

Plaintiff filed her DIB application on January 26, 2017, alleging a disability onset date of January 1, 2006. Transcript ("Tr."), 158, Nov. 20, 2020, ECF No. 8. In her application, Plaintiff alleged that her ability to work was limited by several conditions, including: rheumatoid arthritis, extreme fatigue, depression/anxiety, migraines, nausea, lower back issues, shooting pain down left leg, hypertension, hiatal hernia, and gastroesophageal reflux disease ("GERD"). Tr. 173. On April 28, 2017, the Commissioner notified Plaintiff that her DIB claim was denied, and explained:

> We have determined your condition was not disabling on any date through 06/30/11, when you were last insured for disability benefits. To get disability benefits, we must be able to obtain medical evidence which shows the severity of your condition. Although we contacted your medical sources we were unable to obtain all the evidence we needed. Your period of eligibility for Social Security Benefits has already passed. Therefore, we only considered information about your condition up to the time you were last insured for disability benefits.

Tr. 80. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 86.

Plaintiff's request was approved, and the hearing was held via videoconference on March 26, 2019. Tr. 29. Plaintiff appeared with counsel, and an impartial vocational expert joined the hearing by phone. Tr. 31. At the outset of the hearing, the ALJ explained to Plaintiff the period of time that she was evaluating:

> Now, in your particular case, you applied for Disability Insurance Benefits . . . . That's an insurance policy, and when you worked you pay the premiums and get the coverage. When you stopped working, the coverage expires. And your coverage expired several years ago on June 30th of 2011. Now, for us what that means is that I have to concern myself with not what your condition is today, but what your condition . . . was – while you were still insured.

Tr. 32. Plaintiff's counsel then summarized Plaintiff's situation for the ALJ:

> [Plaintiff] is a 63-year old female. She was 50 years old at her alleged onset date and she was 56 years old at her date last insured. She has a significant past work history as a manager at a care facility. And her impairments include rheumatoid arthritis, fibromyalgia, osteopenia, fatigue, depression, anxiety, migraines, chronic back pain, left leg sciatica, [irritable bowel syndrome], sleep apnea, insomnia, and hypertension. In addition, right knee pain.

Tr. 34.

With respect to her education and work history, Plaintiff testified that she had a twelfth-grade education, and worked for Homemakers Upstate Group, a company that provides home health aides, for 27 years until she was let go in 2005. Tr. 36–39. She was "more or less the computer person . . . . install[ing] the computers and train[ing] individuals how to use our software," splitting her time between the corporate office in Buffalo and 14 satellite locations. Tr. 37. Plaintiff stated that she had taken significant time off because her "health had declined to the point where it was very hard to travel and manually do some of the work that [she] had to do . . . ." Tr. 39. She said that she had taken off for several weeks in November and December of 2005, and had planned to return after the first of the year, but was terminated in late December because she was unable to produce a doctor's note indicating that she would be able to perform all of her job duties. Tr. 53.

With respect to her activities of daily living, Plaintiff testified that she "became more and more depressed" after she lost her job in 2005, and her anxiety started to elevate. Tr. 39–40. She was living in a two-story house at the time, and although she had difficulty recalling, she could "probably" do laundry and house cleaning, but that her husband did most

of the shopping because she had become limited with fatigue and pain. Tr. 43. She would have to do the cooking in stages, because standing for a long period of time had become difficult. Tr. 52. Plaintiff had the most difficulty with her hands, elbows, knees and ankles, and she would have to use a cane on her bad days, which occurred approximately four times each year and lasted for between one week and "months." Tr. 47–48. She was also fatigued, and had "debilitating" migraine headaches. Tr. 50. She would spend her days visiting her mother and watching television, and would on occasional mornings take walks or go to breakfast with her husband. Tr. 45–46.

On April 11, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 24. In his decision, the ALJ found that Plaintiff only met the special insured status requirements of the Social Security Act through June 30, 2011, and that evidence from after that date was relevant only insofar as it relates to the period between the alleged onset date in December 2005 and the date last insured in June 2011. Tr. 17. At step one of the five-step evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity between the alleged onset date and the date last insured. Tr. 17. At step two, the ALJ determined that Plaintiff has the severe impairments of rheumatoid arthritis and fibromyalgia. Tr. 17. The ALJ also assessed Plaintiff's alleged mental impairment of depressive disorder utilizing the "special technique" required by 20 C.F.R. § 404.1520a.[2] Tr. 13. In so doing, the ALJ determined that Plaintiff's

---

[2] The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant

depression caused no more than mild limitations in any of the four psychological areas of functioning, and therefore found that Plaintiff's mental impairments are non-severe. Tr. 19.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that for the period between her alleged onset date (December 2005) and her date last insured (June 2011) (the "relevant period"), Plaintiff had the residual functional capacity[3] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she "could occasionally climb ladders, ropes or scaffolds; she could frequently climb ramps or stairs, stop, kneel, crouch, or crawl." Tr. 20. Based on this RFC, as well as the testimony of the vocational expert, at step four the ALJ found that Plaintiff was capable of performing her past relevant work as a "training representative." Tr. 23. Hence, the ALJ concluded that Plaintiff *was not* disabled for the purposes of DIB during the relevant period. Tr. 24.

On April 3, 2020, the Commissioner's Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner, subject to judicial review.

## DISCUSSION

As indicated above, Plaintiff presents two principal arguments in support of her request that the Court reverse the ALJ's decision and remand the matter to the Commissioner for further proceedings. First, Plaintiff maintains that the ALJ erred in his evaluation of Plaintiff's

---

has a "serious and persistent" mental disorder.

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

subjective complaints. Second, Plaintiff argues that the ALJ's RFC was based exclusively on the ALJ's lay opinion, and therefore not supported by substantial evidence. After considering the record and the parties' arguments, the Court declines to reverse the ALJ.

<u>Judicial Review of the Commissioner's Final Decision</u>

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

<u>The ALJ's Evaluation of Plaintiff's Subjective Complaints</u>

In his decision denying Plaintiff DIB benefits, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 23. The ALJ

further explained:

> There is no question that the record and the claimant's testimony are consistent that symptoms have significantly worsened since the claimant's date last insured. Since that time, the claimant's mental symptoms have become severe, culminating in a hospitalization for suicide attempt. Before the date last insured, the claimant had been diagnosed with depression and was exhibiting symptoms, but they were well managed. She had been off work and was anticipating returning to work, when she was fired for failure to provide a medical excuse from her doctor. At the hearing, [Plaintiff] testified that she had been more active, at that time. Portions of the record pertaining to the relevant period indicate capacity for light activity. One note says she had more pain and stiffness when sedentary, and this is consistent with the claimant's condition, reported symptoms, and examinations.

Tr. 23. Plaintiff maintains that the ALJ's finding in this regard is error because it is conclusory, and because his explanation was insufficient to permit meaningful judicial review. Pl. Mem. of Law at 14–21.

Effective March 16, 2016, the Commissioner issued Social Security Ruling (SSR) 16-3p, which rescinded SSR 96-7p: *Policy Interpretation Ruling Titles II and XVI Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. See *SSR 16-3p*:*Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935 (Mar. 16, 2016) ("SSR 16-3p"). Pursuant to SSR 16-3p, the Commissioner "eliminat[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term . . . . [and] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id.* Rather, consistent with the regulations, ALJs are instructed "to consider all of the evidence in an individual's record . . . . [and] evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult." *Id.*

With respect to these considerations, the Second Circuit has stated that:

Evidence of pain is an important element in the adjudication of DIB and SSI claims, and must be thoroughly considered in calculating the RFC of a

> claimant. *See Lewis v. Apfel*, 62 F. Supp.2d 648, 657 (N.D.N.Y. 1999). "[S]ymptoms, including pain, will be determined to diminish [a claimant's] capacity for basic work activities to the extent that . . . [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

*Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (footnote omitted). Nevertheless, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." 42 U.S.C. § 423(d)(5)(A). Thus, "[t]here must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence . . . . would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

In his decision, the ALJ thoroughly documented the evidence that he believed to be inconsistent with Plaintiff's testimony, and that led him to conclude that her mental impairments were non-severe during the relevant period, and the "[p]ortions of the record pertaining to the relevant period indicate capacity for light activity." Tr. 23. For instance, with respect to her mental impairment of depressive disorder, the ALJ noted that Plaintiff's history of depression began in 2003 when both of her parents had severe medical issues. Tr. 18 (citing Tr. 233, medical evaluation from Plaintiff's psychological assessment following her 2012 suicide attempt). He further noted that Plaintiff's medication for depression was listed throughout the treatment notes of Plaintiff's rheumatologist, Karen Krutchick, M.D., and that she was at one point hospitalized for general weakness in 2009 coincident with an adjustment of her anti-depressant medication. Tr. 22 (citing Tr. 252). However, the ALJ also fairly observes that the evidence in the record for the period between the alleged onset date in 2005 and the date last insured in 2011 (the "relevant period") indicates no more than a mild limitation in the four areas of psychological functioning evaluated for determining the severity

of a mental impairment. Tr. 19.

With respect to Plaintiff's physical impairments, the ALJ cited to a series of treatment notes from the relevant period that were prepared by Dr. Krutchick, and shared with Plaintiff's primary care physician. *See, e.g.*, Tr. 421. In February 2008, Dr. Krutchick noted tenderness and pain in a number of Plaintiff's joints, and that emotionally she was "a mess," but also described her activities of daily living as "unlimited." In May 2008, Dr. Krutchick noted that plaintiff's activities of daily living had been limited by mood and arthritis, but that a change in medications led her to be physically more active and feeling better with respect to mood. Tr. 973. Subsequent treatment notes for appointments with Dr. Krutchick indicate that Plaintiff was capable of unlimited daily activities "with some modifications" in November 2008 (Tr. 969), February 2009 (Tr. 958), September 2010 (Tr. 904), December 2010 (Tr. 888), March 2011 (Tr. 872, also noting Plaintiff has been doing the stairs in her house and "walking more"), June 2011 (Tr. 846), and September 2011 (Tr. 823). In her June 2011 treatment note, Dr. Krutchick observed that Plaintiff was walking and gardening, and "generally getting more exercise" despite continued stiffness in the mornings for 20 to 30 minutes. Tr. 846.

Given the thoroughness of the ALJ's explanation and recitation of the evidence, the Court finds no error in the ALJ's consideration of Plaintiff's subjective complaints.

<u>The ALJ's RFC Determination</u>

As noted above, the ALJ determined that during the relevant time period, Plaintiff's mental limitations were non-severe, and that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with a few specific exertional limitations. In his discussion explaining the RFC determination, the ALJ assessed two medical opinions: he gave "little weight" to the opinion of non-examining state agency medical consultant James Lawrence, M.D., and "little weight" to the opinion of non-examining state

agency psychiatric consultant H. Tzetzo, M.D.. Tr. 23. Both Dr. Lawrence and Dr. Tzetzo had reviewed Plaintiff's medical evidence, and concluded that "there is insufficient medical evidence in [the] file to make a medical determination" as to Plaintiff's disability. Tr. 1125. The ALJ disagreed, stating that "a review of the claimant's records submitted before Dr. Lawrence's report shows that sufficient evidence exists to determine a baseline residual functional capacity that existed before the date last insured." Tr. 23.

Plaintiff maintains that the ALJ's decision should be reversed and remanded because the RFC determination was based on lay opinion and is not supported by substantial evidence. Pl. Mem. of Law at 21. Plaintiff argues that the ALJ's assignment of little weight to the two medical opinions in the record, together with his finding that Plaintiff's complaints were inconsistent with the medical evidence, created an obvious gap in the record and left the ALJ with no opinion evidence to rely upon in making a determination of Plaintiff's RFC. Pl. Mem. of Law at 21. Plaintiff states that she was still treating with her rheumatologist, Dr. Krutchick at the time of the hearing, and maintains that the ALJ should have tried to obtain an opinion from Dr. Krutchick regarding the functional limitations imposed by Plaintiff's impairments. Pl. Mem. of Law at 24. In response, the Commissioner argues that the ALJ's decision should be affirmed because Plaintiff failed to satisfy her duty to prove that she was disabled, and the ALJ had no duty to seek additional evidence, including opinion evidence, because his RFC determination was based on substantial evidence. Def. Mem. of Law at 8–19.

This case presents a close question between competing duties of the parties. On the one hand, it is well-settled that the claimant has the duty to prove that she is disabled. *See* 20 C.F.R. 404.1512(a)(1); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If a claimant fails to submit the medical and other evidence the Commissioner needs, the Commissioner

"will have to make a decision based on information available in [the claimant's] case." 20 C.F.R. § 404.1516. Evidence is insufficient "when it does not contain all the information [the Commissioner] need[s] to make [a] determination or decision." 20 C.F.R. § 404.1520b(b)(2). "A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (internal quotation marks omitted)).

On the other hand, the Second Circuit has also consistently held that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 (2nd Cir.1999). To be sure, it is "within the province of the ALJ" to make the ultimate determination as to the scope of the claimant's RFC, and whether or not the claimant is disabled. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). *See also* 20 C.F.R. 404.1527(e)(2). However, before an ALJ can make a determination that a claimant is not disabled, the ALJ must develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant files his or her application "unless . . . development of an earlier period is necessary . . . ." 20 C.F.R. § 404.1512(b)(1). In cases such as the present, in which the date last insured is prior to the application filing date, "complete medical history" means the records of the claimant's medical source(s) covering the 12-month period prior to the month the claimant was last insured for disability benefits. 20 C.F.R. § 404.1512(b)(1)(ii).

Although it is a close question, in the present case the Court finds that the ALJ did not err when he formulated an RFC determination without seeking additional medical evidence.

To begin with, after denying Plaintiff's disability claim originally on the basis that "we were unable to obtain all the evidence we needed" (Tr. 80) and granting Plaintiff's request for a hearing before an ALJ (Tr. 84), the Commissioner notified Plaintiff's counsel in November 2018 that the exhibit list was ready for his review (Tr. 188). The notification clearly stated that "[i]t is the claimant's responsibility to provide medical evidence showing that he/she has an impairment," and outlining the evidentiary items that Plaintiff should submit. Tr. 188. The letter then asked that Plaintiff's counsel advise the ALJ "when all relevant evidence is up-to-date and the case is ready to be scheduled." Tr. 189.

Approximately one year later, the hearing was held, and the following exchange occurred between the ALJ and Plaintiff's counsel regarding the medical evidence:

> ALJ: . . . [W]e've got proposed Exhibits 1 through 26F for admission into the record. Have you had a chance to look those over?
>
> ATTY: Yes, I have, Your Honor.
>
> ALJ: Any objection to admission?
>
> ATTY: No, Your Honor.
>
> ALJ: 1 through 26F are admitted.

Tr. 33. After counsel's opening statement, the ALJ then asked counsel to "be on the lookout for records you can cite me to, to get me before the [date last insured]," and counsel responded, "Okay." Tr. 34. At the close of the hearing, the ALJ stated that he was going to go through the "hundreds of pages" of medical records again, and stated "[i]f there's nothing further we'll conclude the hearing and close the record . . . ." Tr. 58. Neither Plaintiff nor counsel objected to closing the record.

In sum, Plaintiff and her counsel had clear notice of both her burden to prove her disability and the ALJ's need to examine records from the relevant period. Further, she was afforded ample opportunity to obtain or request the ALJ's assistance to obtain additional records, yet did not request the ALJ's assistance in contacting or securing evidence from any of her medical sources. *See Barron v. Saul*, No. 18CV1304, 2020 WL 1283443, at \*4 (W.D.N.Y. Mar. 18, 2020) ("Plaintiff has been represented in this application and advised of the consequence in not responding, hence the ALJ need not ensure that all relevant facts are developed that would be required for a self-represented claimant" (citing *Cruz v. Sullivan*, 912 F.2d 8, 11-12 (2d Cir. 1990); *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980); and *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir. 1972)).

Moreover, "it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion," especially where the medical evidence shows relatively minor impairments, such that an ALJ permissibly can render a "common sense judgment" about functional capacity. *Lewis v. Colvin*, 2014 WL 6609637, \*6 (W.D.N.Y. 2014) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013)). The salient question before the Court, then, is whether the record "contains sufficient evidence from which an ALJ can assess the [plaintiff's RFC]." *Id*. (quoting *Tankisi*, 521 F. App'x at 34). The Court finds that it does.

As summarized above, although Plaintiff's rheumatologist recommended that she see a psychotherapist in 2005 (Tr. 1007), there was scant evidence in the record of mental impairments prior to Plaintiff's hospitalization for a suicide attempt in 2012. *See, e .g., Thomas v. Comm'r of Soc. Sec. Admin.*, No. 19 CIV. 1177 (GWG), 479 F. Supp. 3d 66, 89 (S.D.N.Y. Aug. 18, 2020) (upholding the ALJ's conclusion regarding the severity of an impairment based on treatment that was "essentially routine and/or conservative in nature" accompanied by

other substantial evidence in the record). Further, there were multiple instances of treatment notes from Plaintiff's rheumatologist, Dr. Krutchick, that indicated Plaintiff's activities of daily living during the relevant time period were unlimited, with some modifications that were not specified in the notes. *See* Tr. 421, 872, 888, 904, 958, 969. In addition, during her testimony before the ALJ, Plaintiff indicated that her plan was to return to her former job after January 1, 2006, but that she was fired because her physician had taken a leave of absence to care for her dying mother and was unavailable to write a note of release to Plaintiff's employer. Tr. 53. She also testified that she was not undergoing treatment by a mental health professional at that time, but was prescribed anti-depressants by her rheumatologist (Tr. 40); was living in a two-story house with her husband (Tr. 42); driving more, and could "do laundry without a problem" and "probably" more house-cleaning (Tr. 43); take occasional walks with her husband (Tr. 46); and was only using a cane "on occasion." Tr. 48. *See Borck v. Comm'r of Soc. Sec.*, No. 18-CV-1183 HBS, 2020 WL 1226885, at *3 (W.D.N.Y. Mar. 13, 2020) ("The record here required no interpretation at the level that caused concern in *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)," in which the ALJ decided on his own that plaintiff's "seizures were caused by a failure to take his medication" when no treatment provider said so).

Under the foregoing circumstances, the Court cannot say the ALJ failed to discharge his duty to develop the record, and finds that the decision was supported by substantial evidence. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (declining to find the ALJ failed to discharge his duty to develop the record where the ALJ gave Plaintiff and his counsel an opportunity to obtain additional records and they failed to do so).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, and the Commissioner's motion for judgment on the

pleadings [ECF No. 15] is granted. The Clerk is respectfully directed to close this case.

DATED:    September 29, 2021
          Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge